**R.C. BIGELOW, INC., Plaintiff–Appellant,**

**v.**

**LIBERTY MUTUAL INSURANCE COMPANY, Defendant–Appellee.**

**Docket No. 01–7197.**

United States Court of Appeals, Second Circuit.

Argued Oct. 12, 2001.

Decided April 18, 2002.

Frank S. Occhipinti, Stewart, Occhipinti & Makow, LLP, New York, N.Y. (Colin Gunn, Gunn, Godfrey & Allison, Westport, Conn., on the brief), for Plaintiff–Appellant.

Richard J. Kenny, Rome McGuigan Sabanosh, P.C., Hartford, Conn. (William W. Kaliff, Hartford, Conn., on the brief), for Defendant–Appellee.

Before WALKER, Chief Judge, NEWMAN, and KEARSE, Circuit Judges.

JON O. NEWMAN, Circuit Judge.

The issue on this appeal is whether the "advertising injury" provision of a liability insurance policy obligated an insurer to defend a claim that an insured infringed a competitor's trade dress and included the allegedly infringing trade dress in published advertisements. Plaintiff Appellant R.C. Bigelow, Inc. ("Bigelow") appeals from a judgment of the United States District Court for the District of Connecticut (Alvin W. Thompson, District Judge),

granting summary judgment to Defendant Appellee Liberty Mutual Insurance Co. ("Liberty Mutual"). The Court rejected Bigelow's claim for the costs incurred in successfully defending a suit by Celestial Seasonings, Inc. ("Celestial"). We conclude that Liberty Mutual had a duty to defend, and we therefore reverse the judgment of the District Court.

## Background

Bigelow, a Connecticut corporation, is a manufacturer and distributor of specialty teas. Celestial is a competitor of Bigelow's in the herbal tea market. Liberty Mutual, a Massachusetts company, provided liability insurance to Bigelow. The policy contained an "advertising injury" provision, discussed below, which is at issue in this litigation.

*Celestial's suit in Colorado.* In June 1995, Celestial filed in the United States District Court for the District of Colorado a complaint against Bigelow for trade dress infringement, false advertising, unfair competition, and trade dress dilution, arising under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and under state statutes and common law. In February 1996, Celestial filed an amended complaint, adding a damage claim to its false advertising claim and adding a new claim for dilution of a famous mark under section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c). The first claim, for trade dress infringement, alleged that in January 1994, Bigelow introduced its herbal teas in new packaging with trade dress confusingly similar to that of Celestial's boxes. The second claim, for false advertising, alleged that Bigelow failed to correctly indicate on the packaging that the teas were "artificially flavored," and that Bigelow engaged in false advertising by mounting an aggressive marketing and print advertising campaign to promote these teas, while con-

veying the false and misleading impression that those herbal teas were all natural. The third claim, for unfair competition, incorporated the factual allegations from the first two claims and alleged that Bigelow had misappropriated Celestial's product image, trust, loyalty, and goodwill. The fourth and fifth claims, for trade dress dilution and common law trade dress dilution, incorporated the factual allegations from the trade dress infringement claim and alleged that Bigelow had intentionally "whittled down, blurred or tarnished plaintiff's trade dress so as to dilute the trade dress in commerce."

In January 1997, the District Court in Colorado entered judgment in favor of Bigelow on all counts in Celestial's action.

*Request for Liberty Mutual to defend and indemnify.* While the Colorado suit was pending, Bigelow notified Liberty Mutual of the suit, sent the insurer a copy of the complaint, and requested the insurer to defend and indemnify Bigelow in the action. In February 1996, Bigelow sent Liberty Mutual a copy of Celestial's amended complaint. In March 1996, Liberty Mutual denied Bigelow's claim for coverage.

*Bigelow's suit in Connecticut.* In August 1996, Bigelow brought the instant suit against Liberty Mutual in the Connecticut District Court, seeking damages for defense of the Colorado suit and indemnity against potential liability. On cross-motions for summary judgment, the District Court ruled in favor of Liberty Mutual in January 2001. *R.C. Bigelow, Inc. v. Liberty Mutual Insurance Co.,* No. 96 Civ. 1643 (D.Conn. Jan. 25, 2001) ("*Amended Ruling*").

Bigelow maintains that Liberty Mutual was obligated to defend it against Celestial's suit in Colorado and, having failed to do so, must now pay the costs of defense that Bigelow incurred. Bigelow contends

that Celestial's suit alleged a claim within the scope of the advertising injury provision of Liberty Mutual's policy and that the District Court erred as a matter of law in holding that trade dress infringement could never take place in the context of advertising. Liberty Mutual contends that none of Celestial's claims alleges an advertising injury as defined in the policy, and that therefore it did not have a duty to defend.

## Discussion

*The advertising injury provisions.* The "Personal and Advertising Injury Liability Endorsement" in the Liberty Mutual insurance policy provides:

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this coverage part applies. We will have the right and duty to defend any "suit" seeking those damages.

. . .

b. This insurance applies to: . . . (2) "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services.

The "Definitions" section provides:

"Advertising injury" means injury arising out of paid announcements in the print or broadcast media resulting in one or more of the following offenses:

a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

b. Oral or written publication of material that violates a person's right of privacy;

c. Copying a person's or organization's advertising ideas or advertising style; or

d. Infringement of copyright, title or slogan.

The "Exclusions" section provides:

This insurance does not apply to: . . .

b. "Advertising injury" arising out of:

(1) Breach of contract, other than misappropriation of advertising ideas under an implied contract;

(2) The failure of goods, products or services to conform with advertised quality or performance;

(3) The incorrect description or mistake in the advertised price of goods, products or services;

(4) Patent infringement or securities fraud; or

(5) An offense committed by an insured whose business is advertising, publishing or telecasting.

Bigelow contends that the trade dress infringement and related claims in Celestial's complaint fell within the third type of advertising injury covered by the policy, *i.e.,* injury from "[c]opying a person's or organization's advertising ideas or advertising style." Liberty Mutual contends, and the District Court found, that none of the five claims in Celestial's complaint alleged an "advertising injury" and therefore Liberty Mutual was under no duty to defend.

*The duty to defend.* Under Connecticut law, which applies in this diversity action, "an insurer's duty to defend, being much broader in scope and application than its duty to indemnify, . . . [t]he obligation of the insurer to defend does not depend on whether the injured party will successfully maintain a cause of action against the insured but on whether he has, in his complaint, stated facts which bring the injury within the coverage." *Springdale Donuts, Inc. v. Aetna Casualty and Surety Co.,* 247 Conn. 801, 807, 724 A.2d 1117 (1999) (internal quotation marks and

citations omitted). The duty to defend does not hinge on the skill or manner in which a complaint is drafted, but rests on the substantive thrust of the complaint, and the surrounding facts. *See QSP, Inc. v. Aetna Casualty and Surety Co.,* 256 Conn. 343, 376, 773 A.2d 906 (2001); *Schwartz v. Stevenson,* 37 Conn.App. 581, 585, 657 A.2d 244 (1995) (noting that the duty to defend depends on whether the complaint "stated facts which *appeared* to bring [the plaintiff's] claimed injury within the policy coverage") (emphasis in original). "[I]f an allegation of a complaint falls even *possibly* within the coverage, then the insurance company must defend the insured." *Imperial Casualty and Indemnity Co. v. State,* 246 Conn. 313, 324, 714 A.2d 1230 (1998) (emphasis in original).

 In determining the scope of coverage under a policy, Connecticut applies the following rules of interpretation:

> The interpretation of an insurance policy ... involves a determination of the intent of the parties as expressed by the language of the policy ... [including] what coverage the ... [insured] expected to receive and what the [insurer] was to provide, as disclosed by the provisions of the policy.... [A] contract of insurance must be viewed in its entirety, and the intent of the parties for entering it derived from the four corners of the policy.... The policy words must be accorded their natural and ordinary

meaning ... [and] any ambiguity in the terms of an insurance policy must be construed in favor of the insured because the insurance company drafted the policy.

*Springdale Donuts,* 247 Conn. at 805–06, 724 A.2d 1117 (internal quotation marks and citations omitted); *see also QSP,* 256 Conn. at 376, 773 A.2d 906 (reiterating adherence to "broad interpretation" standards in construing insurance policies).

 *Advertising injury.* Although Celestial's complaint against Bigelow included claims of false advertising, these claims did not trigger a duty to defend under the advertising injury provision because they concerned allegedly false claims about *Bigelow's* products, and such false claims about the insured products are explicitly excluded by the policy. Bigelow contends that Celestial's claims of trade dress infringement fall within the scope of the advertising injury provision because the allegedly infringing trade dress was depicted in Bigelow's published advertisements.[1] Celestial's original complaint attached advertisements containing pictures of Bigelow tea and showing the allegedly infringing packaging. Although the amended complaint did not include these exhibits, Liberty Mutual received copies of both complaints and was on notice of the trade dress infringement allegations and the exhibits attached to the first complaint.

---

1. Celestial's complaint included several allegations of alleged trade dress infringement. Celestial claimed that in 1994 Bigelow reintroduced its herbal teas in new packaging with trade dress "confusingly similar" to that of Celestial's boxes. Celestial noted that it had "extensively and prominently used its trade dress in conjunction with identifying and marketing herb teas and ha[d] invested millions of dollars advertising and promoting its products with this trade dress through various market channels." Celestial accused Bigelow of copying its distinctive trade dress, including the size and shape of the box, the orientation of the Principal Display Panel ("PDP"), the panel that faces the consumer when the package is displayed, the placement and type of graphics, the hand-drawn artwork symbolic of the particular tea flavor contained in the package, the color palette consisting of "bright, pure-hued contrasting colors, which creates a multi-colored, coordinated and distinctive presence when different tea flavors are displayed to the consumer," and the placement of words on the PDP.

The Connecticut Supreme Court has defined the word "advertise" as "to announce publicly esp[ecially] by a printed notice or a broadcast; [and] to call public attention to esp[ecially] by emphasizing desirable qualities so as to arouse a desire to buy or patronize." *QSP*, 256 Conn. at 365, 773 A.2d 906 (quoting *Schwartz v. Planning and Zoning Commission*, 208 Conn. 146, 155, 543 A.2d 1339 (1988)) (alterations in original). In order to be considered advertising under Connecticut law, "information must be publicly or widely disseminated." *Id.* at 366, 773 A.2d 906. Thus, to the extent that Bigelow allegedly copied Celestial's packaging and displayed Bigelow's packaging in published advertisements, the Colorado complaint sufficiently alleged that Bigelow copied Celestial's "advertising ideas or advertising style" within the plain meaning of the words in the insurance policy.

We recognize that some courts have construed somewhat similar policy language to place claims involving trademark or trade dress infringement outside the scope of "advertising injury." *See, e.g., Advance Watch Co. v. Kemper National Insurance Co.*, 99 F.3d 795, 800–06 (6th Cir.1996). In *Advance Watch*, the policy covered "misappropriation" of advertising ideas or style, and the Court reasoned that "misappropriation" has long existed "as a definite tort," *id.* at 802, and that the phrase "misappropriation of advertising ideas or style ... refer[s] to a category of actionable conduct separate from trademark and trade dress infringement," *id.* In the pending case, however, the policy defines "advertising injury" to include the "[c]opying" of advertising ideas or style. The term "copying" does not suggest a traditional tort that can so readily be considered distinct from trademark or trade dress infringement.

*Causal nexus requirement.* The District Court rejected coverage not only be-cause it thought that the Celestial complaint did not allege advertising injury, but also because, even if such injury were alleged, it was not "caused by an offense committed in the course of advertising your goods, products or services," as required by Liberty Mutual's policy.

As the Third Circuit has noted, "there is much confusion in the caselaw concerning when an 'advertising injury' is 'caused' by advertising within the meaning of standard business insurance policies." *See Frog, Switch & Manufacturing Co. v. Travelers Insurance Co.*, 193 F.3d 742, 750 n. 8 (3d Cir.1999). Some courts have ruled that the copying of a trademark or trade dress is the cause of an alleged "advertising injury," and have declined to consider advertising that depicts such copied marks or dress to have "caused" the advertising injury. *See, e.g., Advance Watch*, 99 F.3d at 806–07 ("[I]t was not [the insured's] advertising in itself which provoked [the suing plaintiff's] claim; it was the fact that in each advertisement ... there was [a product] deceptively similar in shape and appearance to [those of the suing plaintiff].... [I]t is the shape and appearance [of the insured's products that were] claimed to have caused injury."). Other courts, however, have ruled the causal nexus requirement met where advertisements depicted products with confusingly similar trademarks or trade dress. *See, e.g., Energex Systems Corp. v. Fireman's Fund Insurance Co.*, No. 96 Civ. 5993, 1997 WL 358007, at *4 (S.D.N.Y. June 25, 1997) (finding a duty to defend where complaint was concerned with customer confusion, and such confusion was clearly created through advertising); *Massachusetts Bay Insurance Co. v. Penny Preville, Inc.*, No. 95 Civ. 4845, 1996 WL 389266, at *7–*8 (S.D.N.Y. July 10, 1996) (finding coverage because allegations provided ample indication of connection between injuries alleged and advertising activities); *Ben Berger &*

*Son, Inc. v. American Motorist Insurance Co.,* No. 94 Civ. 3250, 1995 WL 386560, at *3 (S.D.N.Y. June 29, 1995) (finding that "[t]he injury caused by Berger's infringement of McKinney's trade dress is an advertising injury because it was Berger's advertising its similar products in its catalogue, in which McKinney's own products had previously been advertised, that diluted McKinney's distinctive trade dress and caused confusion as to the source of the products"); *J.A. Brundage Plumbing & Roto–Rooter, Inc. v. Massachusetts Bay Insurance Co.,* 818 F.Supp. 553, 558 (W.D.N.Y.1993) (finding coverage for trademark infringement where complaint alleged that injury occurred as result of advertising), *vacated due to settlement,* 153 F.R.D. 36 (W.D.N.Y.1994); *Allou Health & Beauty Care, Inc. v. Aetna Casualty and Surety Co.,* 269 A.D.2d 478, 703 N.Y.S.2d 253, 255–56 (2000) (finding sufficient causal connection between trademark infringement alleged in underlying action and insured's advertising activities to afford coverage under policy).

Decisions such as *Advance Watch* appear to have considered the claim against the insured rather narrowly as limited to the *initial* act of copying the claimant's trademark or trade dress, rather than more broadly as encompassing the *continuing* creation of consumer confusion by displaying the allegedly similar mark or dress in advertising. The continuing nature of trademark and trade dress torts has been widely recognized. *See, e.g., Menendez v. Holt,* 128 U.S. 514, 523, 9 S.Ct. 143, 32 L.Ed. 526 (1888) (noting that "[t]he intentional use of another's trademark is a fraud .... and the wrong is a continuing one"); *Brunswick Corp. v. Spinit Reel Co.,* 832 F.2d 513, 526 (10th Cir.1987) (" 'Trademark infringement is a continuous wrong and, as such, gives rise to a claim for relief so long as the infringement persists.' " (quoting *James Burrough Ltd. v. Sign of the Beefeater, Inc.,* 572 F.2d 574, 578 (7th Cir.1978))); *see generally* 4 *Callman on Unfair Competition, Trademarks and Monopolies* § 22.30, at 193 (4th ed. 1995).

██ In the pending case, the District Court concluded that " '[s]ince the creation of the infringing product must precede its advertisement, the latter can hardly be the cause of the former.' " *Amended Ruling* at 12 (quoting *Julian v. Liberty Mutual Insurance Co.,* 43 Conn.App. 281, 292, 682 A.2d 611 (1996)). However, the causation issue is not whether the advertisement can be the cause of the creation of the infringing product; the issue, under the terms of the policy, is whether there has been "advertising injury" that was "caused by an offense committed in the course of advertising" the insured products. In this case, the alleged "offense" is creating consumer confusion by the use of copied trade dress. As the Third Circuit observed in *Frog, Switch,* where an advertising injury is alleged, the relevant causation issue with regard to insurance coverage is not whether "the injury *could have* taken place without the advertising," but "whether the advertising did in fact *contribute materially* to the injury." 193 F.3d at 750 n. 8 (second emphasis added). Bigelow's ads displayed the allegedly infringing trade dress. If, as Celestial alleged, Bigelow's copied trade dress created consumer confusion, the ads could be found to have contributed to such confusion. Because the ads were attached as exhibits to Celestial's complaint, Bigelow was entitled to believe that Celestial would try to use the ads to prove the likelihood of consumer confusion that it claimed resulted from trade dress infringement.

Liberty Mutual contends that obliging it to defend Celestial's claim renders inoperative the policy's requirement that the ad-

vertising injury "aris[e] out of paid announcements in the print or broadcast media." But, in a case such as this, that clause limits the *extent* of the injury that is subject to insurance coverage. *See id.* (where the advertisement causes part of the total harm, and constitutes a complete tort in itself, there is a duty to *defend* but the duty to *indemnify* is limited to the harm caused by the advertisement). Bigelow has shown a plausible interpretation of the policy that would cover the underlying allegations while still according the terms their "natural and ordinary meaning," and without implicating any of the policy exclusions. Accordingly, Liberty Mutual had a duty to defend Bigelow in the underlying action.

## Conclusion

The judgment of the District Court is reversed, and the case is remanded for determination of the damages, *i.e.*, the defense costs, to which Bigelow is entitled.