GREAT LAKES BEVERAGES, LLC,
Plaintiff,

v.

Keith R. WOCHINSKI d/b/a New London Bottling
Company, d/b/a New London Kist Bottling
Company, d/b/a Kist Bottling Company, NLKB
LLC/New London Keith's Bottling, LLC,
Derek J. Wochinski and NLD New London
Distributing, LLC, Defendants-Third-Party
Plaintiffs-Appellants,

v.

K-WAY SYSTEMS, GLB Acquisition, LLC,
Dr. Jeffrey Wierichs, Timothy Carpenter, John
Doe, ABC Insurance Company, DEF Insurance
Company, Richard Knutson, Steven Lowney,
Jim Carter, GHI Insurance Company,
JKL Insurance Company, MNO Insurance
Company, PQR Insurance Company, STU
Insurance Company, VWX Insurance Company
and YZ Insurance Company, Third-Party
Defendants,

AMCO INSURANCE COMPANY,
Intervening-Defendant-Respondent,

ERIE INSURANCE EXCHANGE and Pekin Insurance
Company, Intervenors.

Court of Appeals

649

*No. 2016AP386. Submitted on briefs December 20, 2016. —Decided January 18, 2017.*

2017 WI App 13

(Also reported in 892 N.W.2d 333.)

652

On behalf of the defendants-third-party plaintiffs-appellants, the cause was submitted on the briefs of

*John F. Mayer, Ryan R. Graff* and *Katelyn P. Sandfort* of *Nash, Spindler, Grimstad & McCracken LLP*, Manitowoc.

On behalf of the intervening-defendant-respondent, the cause was submitted on the brief of *Todd M. Rowe* of *Tressler LLP*, Chicago.

Before Stark, P.J., Hruz and Seidl, JJ.

¶ 1. STARK, P.J. We review a decision of the circuit court declaring that insurance policies AMCO Insurance Company issued to GLB Acquisition, LLC (GLBA) excluded coverage to GLBA for third-party claims brought by Keith Wochinski and several related parties (collectively, Wochinski). The circuit court concluded the policies' "breach of contract" exclusions barred coverage for Wochinski's claims. We agree that the breach of contract exclusions apply, and we therefore affirm the order dismissing AMCO from this action.

## BACKGROUND

¶ 2. Wochinski worked in the beverage industry, doing business as New London Bottling Company, New London Kist Bottling Company, and Kist Bottling Company. He manufactured and sold specialty sodas and juices, and sold national brand beverage products as well.

¶ 3. In June 2009, K-Way Systems contracted with Wochinski to purchase his beverage distribution business. The purchase agreement consisted of three parts: an asset purchase agreement, a covenant not to compete, and a supply agreement. Under the asset purchase agreement, K-Way purchased Wochinski's customer lists, formulas, trade names, goodwill, and other business assets. Under the covenant not to

654

compete, Wochinski agreed not to compete with K-Way in the beverage distribution business for a specified period of time. Under the supply agreement, K-Way agreed to purchase beverage products from Wochinski to sell to its customers.

¶ 4. The business relationship between Wochinski and K-Way quickly soured. According to Wochinski, K-Way ordered only a small amount of product from him, failed to pay him for that product, and thereafter stopped buying product from him altogether. Wochinski asserts he sent multiple letters to K-Way demanding payment and compliance with the supply agreement, but K-Way did not respond. Wochinski therefore wrote to K-Way stating he considered K-Way to be in breach of the supply agreement, and all parts of the purchase agreement were therefore void.

¶ 5. K-Way later sold its business to GLBA. Thereafter, Wochinski began working with his son in the beverage distribution industry. According to Wochinski, GLBA did not honor his rescission of the purchase agreement and, instead, "threatened and harassed [him] in an attempt to enforce the non-compete." GLBA subsequently filed the underlying lawsuit against Wochinski, seeking to enforce the non-compete agreement and also alleging that Wochinski had mislabeled products and misused trade names, resulting in unfair competition. GLBA ultimately sold its assets to Great Lakes Beverages, LLC, and assigned its rights in this lawsuit to Great Lakes Beverages.

¶ 6. Wochinski subsequently filed a counterclaim against Great Lakes Beverages and a third-party complaint against GLBA and several other parties. He also moved for summary judgment on Great Lakes Beverages' claims. The circuit court granted Wochinski's

655

summary judgment motion in part in January 2014. The court concluded the non-compete agreement was unenforceable because Wochinski validly rescinded the purchase agreement in October 2010 as a result of K-Way's breach. However, the court determined material issues of fact remained regarding Great Lakes Beverages' unfair competition claim against Wochinski.

¶ 7. In February 2014, Wochinski filed an amended third-party complaint, which asserted multiple claims against GLBA, including a claim for tortious interference with contracts or prospective contracts. The tortious interference claim alleged that GLBA and other third-party defendants "intentionally interfered with Wochinski's actual and prospective contractual relationships" by "harassing and threatening Wochinski and other actions to enforce a non-compete they knew or should have known was rescinded and by telling actual and prospective customers that the non-compete was in effect when it was not."

¶ 8. AMCO had issued to GLBA a "Premier Businessowners Policy" and a commercial umbrella liability policy that were in effect from September 17, 2010, to September 17, 2011.[1] In March 2014, GLBA's insurance agent faxed a copy of Wochinski's amended third-party complaint to AMCO, along with a letter stating, "I am not sure that the contractual arrangements that

[1] The record does not precisely indicate when the alleged acts underlying Wochinski's claims against GLBA occurred. However, because AMCO does not argue the acts took place outside the policy period and did not deny coverage on that basis, we assume for purposes of this opinion that they occurred between September 17, 2010, and September 17, 2011.

the client may or may not have taken part in are a covered peril in the policy. I am sending this information to you so that you may review and respond to the client." AMCO responded on April 18, 2014, stating, "[I]t is AMCO's position that it does not owe [GLBA] a defense against, or indemnification for, the claims asserted in the" amended third-party complaint.

¶ 9. In the meantime, Pekin Insurance Company and Erie Insurance Exchange, both of which insured Great Lakes Beverages during the relevant time period, intervened in this lawsuit and moved for declaratory/summary judgment that their policies did not provide coverage for Wochinski's claims against Great Lakes Beverages. On January 13, 2015, the circuit court held that the Pekin and Erie policies provided potential coverage for Wochinski's tortious interference claim against Great Lakes Beverages, but not for his other claims. The court further held that, because Wochinski had alleged one potentially covered claim, Pekin and Erie were "obligated to defend the entire action."

¶ 10. GLBA provided AMCO with a copy of the circuit court's January 13, 2015 decision. On January 29, 2015, AMCO wrote GLBA's attorney indicating AMCO would provide a defense for GLBA, subject to a reservation of rights, and would pay GLBA's defense costs dating back to March 25, 2014. On the same date, AMCO moved to intervene in this lawsuit, seeking an adjudication of its coverage obligations. The circuit court granted AMCO's motion, and AMCO then moved for declaratory/summary judgment on the coverage issue, arguing: (1) its policies did not provide an initial grant of coverage for Wochinski's claims against GLBA; and (2) even if the policies did provide an initial

grant of coverage, their "breach of contract," "knowledge of falsity" and "knowing violation" exclusions applied.

¶ 11. In December 2015, the circuit court issued a written decision granting AMCO's motion. The court implicitly concluded the AMCO policies provided an initial grant of coverage for Wochinski's tortious interference claim against GLBA. However, the court agreed with AMCO that the policies' breach of contract exclusions barred coverage for the tortious interference claim because that claim "ar[o]se from" a contractual relationship. The court therefore held AMCO had no duty to defend or indemnify GLBA.

¶ 12. A written order dismissing AMCO from the case was entered on January 13, 2016. Wochinski now appeals.[2]

## DISCUSSION

¶ 13. We independently review a grant of summary judgment, using the same methodology as the circuit court. *Hardy v. Hoefferle*, 2007 WI App 264, ¶ 6, 306 Wis. 2d 513, 743 N.W.2d 843. Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2) (2015–16). "Whether to grant a declaratory judgment is addressed to the circuit court's discretion." *State Farm Fire & Cas. Co. v. Acuity*, 2005 WI App 77, ¶ 6, 280 Wis. 2d 624, 695 N.W.2d 883. However, when the exercise of that discretion turns on the interpretation of an insurance policy, which is a question of law, we conduct an independent review. *Id.*

---

[2] GLBA has not appealed the order dismissing AMCO from this case.

■

¶ 14. Our goal in interpreting an insurance policy is to give effect to the parties' intent. *American Family Mut. Ins. Co. v. American Girl, Inc.*, 2004 WI 2, ¶ 23, 268 Wis. 2d 16, 673 N.W.2d 65. We construe a policy as it would be understood by a reasonable person in the position of the insured. *Id.* If policy language is unambiguous, we simply enforce it as written. *Marnholtz v. Church Mut. Ins. Co.*, 2012 WI App 53, ¶ 10, 341 Wis. 2d 478, 815 N.W.2d 708. However, we construe ambiguous policy language against the insurer and in favor of coverage. *Id.* Policy language is ambiguous if it is reasonably susceptible to more than one interpretation. *Id.*

■

¶ 15. Liability insurance policies impose two distinct duties on the insurer: a duty to defend and a duty to indemnify. *Gross v. Lloyds of London Ins. Co.*, 121 Wis. 2d 78, 84, 358 N.W.2d 266 (1984). The duty to defend is broader than the duty to indemnify, *see General Cas. Co. v. Hills*, 209 Wis. 2d 167, 176 n.11, 561 N.W.2d 718 (Ct. App. 1997), and, accordingly, if there is no duty to defend there is also no duty to indemnify. The duty to defend hinges on the nature, not the merits, of the plaintiff's claim. *Wausau Tile, Inc. v. County Concrete Corp.*, 226 Wis. 2d 235, 266, 593 N.W.2d 445 (1998). It is determined by comparing the allegations in the plaintiff's complaint to the terms of the policy. *Fireman' s Fund Ins. Co. v. Bradley Corp.*, 2003 WI 33, ¶ 19, 261 Wis. 2d 4, 660 N.W.2d 666. An insurer has a duty to defend its insured if the allegations contained within the four corners of the complaint would, if proved, result in a covered loss. *Id.*

¶ 16. "We use a three-step process when comparing the underlying complaint to the terms of the policy in duty to defend cases." *Water Well Sols. Serv. Grp. v. Consolidated Ins. Co.*, 2016 WI 54, ¶ 16, 369 Wis. 2d 607, 881 N.W.2d 285. First, we determine whether the policy provides an initial grant of coverage for the allegations set forth in the plaintiff's complaint. *Id.* If so, we next consider whether any of the policy's exclusions preclude coverage. *Id.* If an exclusion applies, we then consider whether an exception to that exclusion reinstates coverage. *Id.* "If coverage is not restored by an exception to an exclusion, then there is no duty to defend." *Id.* However, if the policy "provides coverage for at least one of the claims in the underlying lawsuit, the insurer has a duty to defend its insured on all the claims alleged in the entire suit." *Id.*

¶ 17. Wochinski argues the circuit court properly concluded AMCO's policies provide an initial grant of coverage for his tortious interference claim against GLBA.[3] He observes that the policies provide an initial grant of coverage for "personal and advertising injury," which is defined in part as injury arising out of "[o]ral or written publication of material that slanders or libels a person or organization *or disparages a person's*

---

[3] Wochinski argued in the circuit court that the AMCO policies also provided initial grants of coverage for several other claims asserted in his amended third-party complaint. On appeal, however, Wochinski argues only that the policies provide an initial grant of coverage for the tortious interference claim. He has therefore abandoned his argument that the policies provide initial grants of coverage for any of the other claims alleged in the amended third-party complaint. *See A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 491, 588 N.W.2d 285 (Ct. App. 1998). Accordingly, we limit our coverage analysis to the tortious interference claim.

660

*or organization's goods, products or services."* (Emphasis added.) He contends his amended third-party complaint alleged that GLBA disparaged his products and services by falsely telling actual and prospective customers he was subject to a non-compete agreement. AMCO responds that those alleged statements do not constitute "disparagement" because they did not demean the quality of Wochinski's goods or services.

¶ 18. We need not resolve the parties' dispute regarding the meaning of the term "disparage" because, assuming without deciding that the AMCO policies provide an initial grant of coverage for Wochinski's tortious interference claim, we nevertheless conclude the policies' "breach of contract" exclusions bar coverage. Both of the AMCO policies contain an exclusion stating they do not cover personal and advertising injury "[a]rising out of a breach of contract, except an implied contract to use another's advertising idea in your 'advertisement'." The circuit court concluded these exclusions precluded coverage for Wochinski's tortious interference claim because that claim arose out of a breach of the contractual relationship between Wochinski and K-Way. Namely, Wochinski alleged GLBA attempted to enforce the rescinded non-compete agreement and had told actual and prospective customers of Wochinski that the non-compete was still in effect.

¶ 19. Wochinski, however, argues his tortious interference claim is completely unrelated to K-Way's breach of the purchase agreement and would exist even if he had not entered into an agreement with K-Way. Wochinski also emphasizes that he has never had a contract with GLBA. In addition, he correctly notes that a tortious interference claim sounds in tort, rather than

661

contract, and can be made against any party that disparages another party, regardless of whether the two parties had a preexisting contractual relationship. *See Finch v. Southside Lincoln-Mercury, Inc.*, 2004 WI App 110, ¶ 18 n.8, 274 Wis. 2d 719, 685 N.W.2d 154 (listing elements of a tortious interference claim, which do not include a contractual relationship between the plaintiff and defendant).

¶ 20. In essence, Wochinski argues the breach of contract exclusions in AMCO's policies apply only to claims seeking damages directly caused by a breach of a contract between the plaintiff and the insured. We conclude, however, that Wochinski interprets the exclusions too narrowly, as the policies exclude coverage for claims "arising out of" a breach of contract. Although no published Wisconsin case has interpreted a breach of contract exclusion similar to the ones found in AMCO's policies, this court has addressed other policy provisions containing the connecting phrase "arising out of." In so doing, we have broadly construed that language.

¶ 21. For instance, in *Trumpeter Developments, LLC v. Pierce County*, 2004 WI App 107, ¶ 8, 272 Wis. 2d 829, 681 N.W.2d 269, we considered an exclusion that applied to claims "arising out of or in any way connected with any operation of the principles of eminent domain, condemnation proceedings, or inverse condemnation, by whatever name called . . . ." In determining that exclusion barred coverage for the plaintiff's claims, we stated the phrase " 'arising out of' in an insurance policy is very broad, general, and comprehensive and is ordinarily understood to mean originating from, growing out of, or flowing from." *Id.*, ¶ 9. We further stated that, when the phrase "arising out of" is used in an exclusion, "all that is necessary is some causal relationship between the injury and the event

not covered." *Id.* Similarly, when interpreting an additional insured endorsement, we stated the phrase "arising out of" "has been construed broadly" and is "commonly understood to mean originating from, growing out of, or flowing from, and require[s] only that there be some causal relationship between the injury and the risk for which coverage is provided." *Mikula v. Miller Brewing Co.*, 2005 WI App 92, ¶ 21, 281 Wis. 2d 712, 701 N.W.2d 613 (quoting *Lawver v. Boling*, 71 Wis. 2d 408, 415, 238 N.W.2d 514 (1976)); *see also State v. GE-Milwaukee, LLC*, 2012 WI App 5, ¶ 15, 338 Wis. 2d 349, 808 N.W.2d 734 (2011) (applying *Trumpeter Developments'* broad interpretation of the phrase "arising out of" to an exclusion barring coverage for claims "arising out of" a "dishonest, fraudulent, criminal or malicious act or omission").

¶ 22. Applying this broad interpretation of the phrase "arising out of" to the case at hand, we conclude a reasonable insured would understand that the tortious interference alleged in Wochinski's amended third-party complaint "arose out of" a breach of contract. The amended third-party complaint alleged that GLBA tortiously interfered with Wochinski's existing and prospective contracts by falsely telling customers Wochinski was subject to a non-compete agreement. The truth or falsity of those representations depends on whether the non-compete agreement remained in effect, or whether Wochinski had validly rescinded the entire purchase agreement in response to K-Way's breach. The tortious interference allegedly committed by GLBA therefore grew out of, or flowed from, K-Way's breach of the purchase agreement. *See Trumpeter Devs.*, 272 Wis. 2d 829, ¶ 9. In other words, there is a "causal relationship" between K-Way's breach and GLBA's tortious interference. *See id.* Consequently, the "breach of

contract" exclusions in AMCO's policies bar coverage for Wochinski's tortious interference claim.

¶ 23. In support of his argument to the contrary, Wochinski relies on a single New York case, *Natural Organics, Inc. v. OneBeacon America Insurance Co.*, 959 N.Y.S.2d 204 (N.Y. App. Div. 2013). Natural Organics manufactured health supplements, some of which were sold under the trade name Nature's Plus. *Id.* at 206. Natural Organics entered into a distributorship agreement with Nature's Plus Nordic A/S, granting Nature's Plus Nordic the exclusive right to distribute Nature's Plus products in Norway, Denmark, Sweden, and Finland. *Id.* According to Nature's Plus Nordic, Natural Organics later wrongfully terminated that agreement and issued a press release announcing the appointment of House of Nature A/S as the exclusive distributor of Nature's Plus products in the Nordic region. *Id.* Nature's Plus Nordic then sued Natural Organics for unfair competition, asserting Natural Organics misrepresented to consumers that House of Nature was the sole distributor for Nature's Plus products in the Nordic region, when in fact Nature's Plus Nordic remained the exclusive distributor in that area. *Id.*

¶ 24. Natural Organics' insurer denied coverage for Nature's Plus Nordic's unfair competition claim, citing its policy's exclusion for personal and advertising injury "arising out of a breach of contract." *Id.* On appeal, the New York Supreme Court, Appellate Division, held that the insurer had "failed to meet its burden of demonstrating that the allegations of product disparagement fell wholly within the exclusion for personal and advertising injuries arising out of a breach of contract." *Id.* at 207. The court reasoned the exclusion did not apply because Nature's Plus Nordic could prove its unfair competition claim based solely on the contents

of the press release, without proving a breach of the exclusive distributorship agreement. *Id.* at 208. The court stated the fact that the alleged misrepresentations in the press release "may or may not arise from a breach of contract is of no moment to the claim." *Id.*

¶ 25. We do not find *Natural Organics* persuasive. The *Natural Organics* court concluded the unfair competition claim in that case did not arise from a breach of contract because it was based entirely on an alleged misrepresentation in a press release. However, the court failed to recognize that the truth or falsity of the relevant statement was dependent on whether Natural Organics wrongfully terminated its exclusive distributorship agreement with Nature's Plus Nordic. If the agreement was properly terminated, the statement in the press release that House of Nature had been appointed the exclusive distributor of Nature's Plus products in the Nordic region was true. Conversely, if Natural Organics breached the exclusive distributorship agreement by wrongfully terminating it, the statement in the press release was false. Thus, contrary to the *Natural Organics* court's conclusion, the unfair competition claim flowed from—and therefore arose out of—an alleged breach of the parties' contract. Because we disagree with the *Natural Organics* court's reasoning, Wochinski's citation to that case does not convince us the circuit court in this case erred by determining the breach of contract exclusions in AMCO's policies barred coverage for Wochinski's tortious interference claim.

¶ 26. In the alternative, Wochinski argues a second exclusion in the "Premier Businessowners Policy" contradicts the breach of contract exclusions. This second exclusion bars coverage for personal and advertising injury:

> For which the insured has assumed liability in a contract or agreement.
>
> HOWEVER, this exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

Wochinski notes this exclusion "advises that [it] does not apply for damages that occur absent a contract," whereas the breach of contract exclusions do not include similar language. Wochinski argues this difference renders the breach of contract exclusions ambiguous, and we must therefore construe them against AMCO and in favor of coverage.

¶ 27. Wochinski's ambiguity argument is unavailing. The breach of contract exclusions relied on by AMCO are completely separate and distinct from the exclusion quoted in the preceding paragraph. The breach of contract exclusions preclude coverage for personal and advertising injury "[a]rising out of a breach of contract." In contrast, a "contractually-assumed liability exclusion" like the one quoted in the preceding paragraph "applies where the insured has contractually assumed the liability of a third party, as in an indemnification or hold harmless agreement; it does not operate to exclude coverage for any and all liabilities to which the insured is exposed under the terms of the contracts it makes generally." *American Girl*, 268 Wis. 2d 16, ¶ 58. The breach of contract exclusions and the contractually-assumed liability exclusion therefore apply in different situations. Accordingly, the fact that the contractually-assumed liability exclusion states it does not apply "to liability for damages that the insured would have in the absence of

the contract or agreement," does not render the breach of contract exclusions, which lack similar language, ambiguous.

¶ 28. For the foregoing reasons, we agree with the circuit court that the breach of contract exclusions in AMCO's policies preclude coverage for Wochinski's tortious interference claim against GLBA. Wochinski does not argue that any exceptions to the breach of contract exclusions reinstate coverage. *See Water Well Sols.*, 369 Wis. 2d 607, ¶ 16. Accordingly, AMCO had no duty to defend or indemnify GLBA. *See id.* As a result, the circuit court properly granted AMCO declaratory/summary judgment and dismissed it from this lawsuit.[4]

*By the Court.*—Order affirmed.

---

[4] Because we conclude the breach of contract exclusions in AMCO's policies preclude coverage for Wochinski's tortious interference claim, we need not address AMCO's alternative argument that the policies' knowing violation exclusions apply. *See Turner v. Taylor*, 2003 WI App 256, ¶ 1 n.1, 268 Wis. 2d 628, 673 N.W.2d 716 (court of appeals need not address all issues raised by the parties if one is dispositive).

In addition, we note Wochinski argues in his brief-in-chief that AMCO breached its duty to defend by denying coverage outright, rather than accepting GLBA's tender of defense under a reservation of rights and then filing a motion to bifurcate and stay in order to obtain a coverage determination. Because of this alleged breach, Wochinski argues AMCO cannot rely on any exclusions or policy limits. However, Wochinski concedes in his reply brief that we need not address this issue if we conclude AMCO had no duty to defend GLBA. Because we so conclude, we do not address Wochinski's argument regarding the ramifications of AMCO's alleged breach.