# COURT OF APPEALS
## DECISION
## DATED AND FILED

## June 11, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP609**

STATE OF WISCONSIN

Cir. Ct. Nos. 2022CV172
2022CV120

IN COURT OF APPEALS
DISTRICT II

---

STEPHEN BOLINSKI, III,

    PLAINTIFF-APPELLANT,

  V.

HARMONY JONES, KATHERINE BOLINSKI, A, B, C INSURANCE COMPANY AND X, Y, Z INSURANCE COMPANY,

    DEFENDANTS,

AUTO-OWNERS INSURANCE COMPANY,

    INTERVENOR-RESPONDENT.

-------------------------------------------------------------

MATTHEW BOLINSKI, DECEASED,

    PLAINTIFF-APPELLANT,

KATHERINE BOLINSKI,

    PLAINTIFF,

  V.

HARMONY JONES AND X, Y, Z INSURANCE COMPANY,

DEFENDANTS,

AUTO-OWNERS INSURANCE COMPANY,

INTERVENOR-RESPONDENT.

---

APPEAL from an order of the circuit court for Kenosha County: DAVID P. WILK, Judge. *Reversed and cause remanded for further proceedings*.

Before Gundrum, P.J., Neubauer, and Grogan, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Stephen Bolinski appeals from an order of the circuit court granting Auto-Owners Insurance Company's (Auto-Owners) motion for judgment on the pleadings. The court held that Auto-Owners did not owe a duty to defend and therefore, did not owe a duty to indemnify Harmony Jones under her Auto-Owners' homeowner's insurance policy for the wrongful death claims asserted against her by Stephen and Katherine Bolinski. Because the allegations in Stephen's complaint, and the reasonable inferences therefrom, do not foreclose all possibility of recovery under the terms of the policy, we reverse and remand for further proceedings consistent with this opinion.

¶2      Stephen and Katherine Bolinski, who are divorced, filed separate civil actions to recover for the death of their minor son, whom Katherine left in the care of Jones on March 27, 2019.[1]  The Bolinskis alleged that Jones "ran a child day care business out of her home."  The Bolinskis each asserted wrongful death claims against Jones, alleged that she was negligent in caring for their son, and sought insurance coverage from Jones' insurer for her allegedly negligent acts.[2]

¶3      Auto-Owners, Jones' insurer, retained merits counsel for Jones under a reservation of rights.  It also intervened in the cases and successfully moved to bifurcate and stay merits proceedings.

¶4      Auto-Owners then filed a motion for a judgment on the pleadings, seeking a declaration that it had no duty to defend and therefore, no duty to indemnify Jones against the Bolinskis' claims.  In its principal and reply briefs, Auto-Owners focused on the allegations in Stephen's complaint and Wisconsin law governing an insurer's duty to defend.  When Stephen sought discovery, Auto-Owners moved for a protective order, arguing, among other things, that the only documents relevant to the pending motion were the complaints and its policy.  The circuit court agreed.  The court subsequently granted Auto-Owners' motion for judgment on the pleadings, declared that Auto-Owners had no duty to defend and therefore, no duty to indemnify Jones, and dismissed it from the Bolinskis' cases.

---

[1]  The Bolinskis' cases were subsequently consolidated.

[2]  Stephen also asserted a wrongful death claim against Katherine and a claim seeking insurance coverage against Katherine's insurer.

3

The court also permitted merits counsel retained by Auto-Owners to withdraw as counsel for Jones. Stephen appeals.[3]

¶5 Liability insurance policies typically impose two main duties—the duty to defend an insured against claims for damages and the duty to indemnify, or "cover," the insured if it is found liable. *Johnson Controls, Inc. v. London Mkt.*, 2010 WI 52, ¶28, 325 Wis. 2d 176, 784 N.W.2d 579. "The duty to indemnify and the duty to defend are separate contractual obligations." *Id.* "The duty to defend is necessarily broader than the duty to indemnify because the duty to defend is triggered by arguable, as opposed to actual, coverage." *Fireman's Fund Ins. Co. v. Bradley Corp.*, 2003 WI 33, ¶20, 261 Wis. 2d 4, 660 N.W.2d 666. An "insurer has a duty to defend when the allegations, if proven, give rise to the possibility of recovery under the terms of the policy," regardless of the actual outcome of the case. *Air Eng'g, Inc. v. Industrial Air Power, LLC*, 2013 WI App 18, ¶10, 346 Wis. 2d 9, 828 N.W.2d 565. Because the duty to defend is broader than the duty to indemnify, if there is no duty to defend, it follows that there is no duty to indemnify. *Great Lakes Beverages, LLC v. Wochinski*, 2017 WI App 13, ¶15, 373 Wis. 2d 649, 892 N.W.2d 333.

¶6 Whether an insurer has a duty to defend is determined through application of the four-corners rule, whereby the circuit court is limited to comparing "the four corners of the underlying complaint to the terms of the entire insurance policy." *Water Well Sols. Serv. Grp., Inc. v. Consolidated Ins. Co.*,

---

[3] Katherine did not file a notice of appeal and she advised this court that she did not intend to participate in Stephen's appeal. Accordingly, we only address Stephen's appeal. Neither party has developed any argument regarding the effect of this decision on Katherine's claim, and we offer no opinion. *See*, *e.g.*, *State v. Pettit*, 171 Wis. 2d 627, 647, 492 N.W.2d 633 (Ct. App. 1992) (we decline to address undeveloped arguments).

2016 WI 54, ¶15, 369 Wis. 2d 607, 881 N.W.2d 285.  Here, when Auto-Owners moved for judgment on the pleadings, the only evidence it submitted was the insurance policy.  As noted above, Auto-Owners' arguments turned on application of the four-corners rule to the allegations in the complaint.  Auto-Owners also, in its reply brief, argued that a denial of its motion would not preclude it from submitting extrinsic evidence and litigating the issue of coverage *later* in the case.  The court determined that Auto-Owners had no duty to defend the allegations of the complaint, and therefore, it followed that it had no duty to indemnify.  Accordingly, we confine our analysis to Auto-Owners' duty to defend.[4]

---

[4]  We note that Auto-Owners retained merits counsel to defend Jones under a reservation of rights pending its motion for judgment on the pleadings.  When an insurer defends under a reservation of rights, it can submit extrinsic evidence and seek a ruling with respect to its duty to indemnify.  *See 5 Walworth, LLC v. Engerman Contracting, Inc.*, 2023 WI 51, ¶13, 408 Wis. 2d 39, 992 N.W.2d 31 (stating that where insurer tenders a defense and seeks summary judgment as to coverage, courts base their analysis "on the full record, not just the complaint").  However, Auto-Owners did not avail itself of that option.  It did not submit extrinsic evidence (other than the insurance policy) in support of its motion, and its arguments in its principal brief and reply brief were grounded exclusively on the duty to defend based on the four corners of the complaints and the policy.  In addition, the circuit court's conclusions in its order granting Auto-Owners' motion tracked the duty to defend analysis under Wisconsin law because the court concluded that "*[a]pplying the plain language of the policy to the facts alleged in the complaint*, there is an initial grant of coverage which is then excluded pursuant to the exceptions to coverage." (Emphasis added.)  In sum, the briefs and order make it apparent that the court analyzed and concluded that Auto-Owners did not have a duty to defend Jones, and that the absence of such a duty led to the conclusion that it also did not have a duty to indemnify her.  *See Great Lakes Beverages, LLC v. Wochinski*, 2017 WI App 13, ¶15, 373 Wis. 2d 649, 892 N.W.2d 333.  On appeal, Stephen invokes the "four corners" rule in his briefs and focuses his arguments on whether the court correctly applied that rule in granting Auto-Owners' motion for judgment on the pleadings.  Accordingly, as do Auto-Owners and Stephen, we limit our analysis to the duty to defend.

While the dissent makes much of Jones' default, resulting in her admission to the allegations of the complaint, this is of little practical significance here because, in analyzing an insurer's duty to defend, we must assume that the allegations of the complaint will be proven true.  *See id.* ("An insurer has a duty to defend its insured if the allegations contained within the four corners of the complaint would, *if proved*, result in a covered loss." (emphasis added)).

¶7     The interpretation of an insurance policy to determine the scope of an insurer's duty to defend is a question of law that is subject to our de novo review. *See* *West Bend Mut. Ins. Co. v. Ixthus Med. Supply, Inc.*, 2019 WI 19, ¶9, 385 Wis. 2d 580, 923 N.W.2d 550 (citing *Water Well*, 369 Wis. 2d 607, ¶12).[5]

¶8     Our analysis proceeds in three steps. First, we determine if "the policy language grants initial coverage for the allegations set forth in the complaint." *West Bend*, 385 Wis. 2d 580, ¶11 (quoting *Water Well*, 369 Wis. 2d 607, ¶16); *5 Walworth, LLC v. Engerman Contracting, Inc.*, 2023 WI 51, ¶16, 408 Wis. 2d 39, 992 N.W.2d 31; *American Fam. Mut. Ins. Co. v. American Girl, Inc.*, 2004 WI 2, ¶24, 268 Wis. 2d 16, 673 N.W.2d 65. If it does not, our analysis ends; if it does, we then analyze whether any exclusions preclude coverage. *West Bend*, 385 Wis. 2d 580, ¶11; *5 Walworth*, 408 Wis. 2d 39, ¶16. Finally, if an exclusion applies, we consider "whether any exception to that exclusion reinstates coverage." *5 Walworth*, 408 Wis. 2d 39, ¶16 (citation omitted).

¶9     The circuit court "must liberally construe the allegations contained in the underlying complaint, assume all reasonable inferences from the allegations made in the complaint, and resolve any ambiguity in the policy terms in favor of the insured." *Water Well*, 369 Wis. 2d 607, ¶15.

¶10     Exclusions "are narrowly construed against the insurer." *Day v. Allstate Indem. Co.*, 2011 WI 24, ¶29, 332 Wis. 2d 571, 798 N.W.2d 199. "The insured bears the burden of showing an initial grant of coverage, and if that burden

---

[5] Auto-Owners asserts that we are to review the circuit court's findings of fact for clear error, but no such findings were made here. To the contrary, in its oral ruling, the court applied the relevant policy language to the allegations in the Bolinskis' complaints. The court made no findings of fact to which the deferential clear error standard would apply.

is met the burden shifts to the insurer to show that an exclusion nevertheless precludes coverage." *Id.*, ¶26.

¶11    Under the homeowners' policy at issue, Auto-Owners agreed to "pay all sums any **insured** becomes legally obligated to pay as damages because of or arising out of **bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies."  Auto-Owners also agreed to defend any claim or suit for damages covered under the policy.  The policy contains an exclusion for "bodily injury or property damage because of or arising out of a **business** owned or financially controlled by an **insured** …."  The policy defines "business" to include "home day care services provided by an **insured**" but not if the services are provided "on an infrequent and irregular basis" or "on a mutual exchange basis."

¶12    Auto-Owners does not challenge the circuit court's determination that the complaints give rise to an initial grant of coverage because they allege bodily injury caused by an occurrence.  Auto-Owners contends that the Bolinskis' identical allegations that Jones "ran a child day care business out of her home" trigger the exclusion for bodily injury "because of or arising out of a business owned or financially controlled by an insured."  This was the ground upon which the court found no duty to defend.

¶13    Because we focus on an exclusion in the policy, Auto-Owners bears the burden of proving that it bars coverage and thus extinguishes Auto-Owners' duty to defend.  *See Day*, 332 Wis. 2d 571, ¶26.  Here, Auto-Owners argues that the exclusion applies because the only reasonable inference that can be drawn from the Bolinskis' allegation that Jones "ran" a day care business in her home is that she "owned or financially controlled" it.  Stephen disagrees, arguing that the

allegation that Jones "ran" a day care business does not necessarily mean that she "owned or financially controlled" it, but instead could also mean that she merely managed it and that all reasonable inferences must be construed in favor of the insured.

¶14 We need not address this argument because of other language in the policy. Specifically, the policy defines the term "business" *not* to include home day care services an insured provides "on an infrequent and irregular basis" or "on a mutual exchange basis." This portion of the definition is not, as the circuit court believed, an exception to the business exclusion. It defines a term in the exclusion. Auto-Owners again argues that the only reasonable inference that can be drawn from the Bolinskis' allegations is that Jones "provided regular day care services in her own home for her own profit."[6]

¶15 We do not agree. Auto-Owners moved for judgment on the pleadings and argued that it had no duty to defend based solely on the allegations in the complaints and the terms of its insurance policy.[7] So, to prevail, Auto-Owners must show that the allegations unambiguously trigger the exclusion. *See Day*, 332 Wis. 2d 571, ¶4. Here, the complaints do not clearly show that Jones ran

---

[6] Auto-Owners also argues that Stephen forfeited any argument grounded in the policy language carving out home day care services provided "on an infrequent and irregular basis" or "on a mutual exchange basis" from the definition of "business" because he did not raise it below. Not so. Stephen did argue in a brief filed after the circuit court held a hearing on Auto-Owners' motion that his complaint "does not state that any day care center 'run' by Harmony Jones was run on a frequent/infrequent or regular/irregular basis." Moreover, the court rejected this argument in its oral ruling, concluding that this carve out was not "operative under the facts of this case." This was sufficient to preserve the argument for our review.

[7] Although it did not do so, even if Auto-Owners had sought a declaration on the duty to indemnify, given that it defended under a reservation of rights, it would be Auto-Owners' burden to show that the exclusion applies. *See Day v. Allstate Indem. Co.*, 2011 WI 24, ¶29, 332 Wis. 2d 571, 798 N.W.2d 199. On this record, Auto-Owners would not have carried that burden.

a "business" as defined by the policy—that is, a home day care that provided services on a frequent and regular basis and not on a mutual exchange basis. Nothing in the complaints suggests how frequent or regular the day care business was or whether Jones provided day care services on a mutual exchange basis. The complaints provide no insight on these points, either way. The consequence of this lack of clarity falls on Auto-Owners, who chose to rely only on the complaints and its policy to argue that there is no duty to defend. Absent allegations that unambiguously show that Jones' day care business falls within the policy's definition of "business," Auto-Owners has failed to establish that there is no possibility of coverage. Accordingly, the circuit court erred in granting judgment on the pleadings.[8]

*By the Court.*—Order reversed and cause remanded for further proceedings.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4 (2023-24).[9]

---

[8] The dissent complains that our decision leaves the parties at sea about how the case may proceed on remand. We do not share that concern. We have determined that the circuit court erred in concluding that Auto-Owners had no duty to defend Jones and, on that basis, no duty to indemnify her. Nothing in our decision precludes Auto-Owners on remand from seeking a declaration concerning its duty to indemnify.

We also disagree with the dissent that we are returning the parties to the circuit court with nothing for Auto-Owners to defend Jones against given that the court has granted Stephen's and Katherine's motions for default. Depending on the proceedings relating to the duty to indemnify, perhaps damages and perhaps an appeal could be at issue. Neither party has addressed this issue and we offer no opinion. *See*, *e.g.*, **Pettit**, 171 Wis. 2d at 647 (we decline to address undeveloped arguments).

[9] All references to the Wisconsin Statutes are to the 2023-24 version.

9

No.    2024AP609(D)


¶16    GROGAN, J. (*dissenting*).    The Majority concludes, based on application of the four-corners rule, *see **Water Well Solutions Service Group, Inc. v. Consolidated Insurance Co.**, 2016 WI 54, ¶15, 369 Wis. 2d 607, 881 N.W.2d 285, that Auto-Owners Insurance Company (Auto-Owners) owed its insured, Harmony Jones, a duty to defend.    If this appeal involved *only* a decision on the duty to defend based on reviewing the four corners of the Complaint, the Majority would be correct.    But that is not what is before us.    The circuit court, in granting Auto-Owners' motion for declaratory judgment on the pleadings, concluded not only that there was no duty to defend *but also* that there was no duty to indemnify and that the policy did not provide coverage.    The Majority, however, omits entirely any discussion of the court's conclusion that there was no coverage under the policy despite the fact that it is reversing the grant of judgment on the pleadings *as a whole*.[1]    To that end, I set forth the relevant procedural history— including that which the Majority omits—and explain why I would conclude that although Auto-Owners owed its insured an initial duty to defend (which it satisfied), there nevertheless was no coverage under the terms of the policy issued. The circuit court's decision should be affirmed.

---

[1] The Majority asserts that in moving for judgment on the pleadings, Auto-Owners argued only "that it had no duty to defend based solely on the allegations in the complaints and the terms of its insurance policy," and states that Auto-Owners did not seek "a declaration on the duty to indemnify[.]"  Majority, ¶15 & n.7.  Auto-Owners' motion, however, explicitly stated it was seeking an order that its insurance policy "does not provide insurance coverage for the claims and/or damages alleged" and that it "has no duty to defend *or indemnify* Harmony Jones in this litigation[.]"  (Emphasis added.)

¶17 Auto-Owners filed a motion in June 2022 seeking to intervene in this action based on its having issued a homeowners insurance policy to defendant Harmony Jones. In the motion, Auto-Owners further asserted it had "promptly conducted an investigation of the claim" upon being notified of the lawsuit and that after it "notified Jones of its coverage position, [it] issued a reservation of rights letter, and filed the instant motion[,]" which also asked that the circuit court bifurcate and stay the proceedings to address the coverage issue prior to addressing liability and damages. The court granted the motion, including the request for a bifurcation and stay.

¶18 The Appellant eventually sought a default judgment against Jones, Auto-Owners' insured, in June 2022, which the circuit court granted in March 2023.[2] Auto-Owners shortly thereafter filed a motion for declaratory judgment on the pleadings that specifically requested a court order stating, as relevant, that the policy it issued to "Jones does not provide insurance coverage for the claims and/or damages alleged" and that it therefore had "no duty to defend or indemnify" Jones. The motion further stated that it was "supported *by the pleadings and proceedings* heretofore on file with the Court *together with the Brief* and in support of the motion." (Emphases added.)

¶19 The Consolidated Court Automation Programs (CCAP)[3] record for this matter reflects that the circuit court held a hearing on Auto-Owners' motion

---

[2] Auto-Owners filed a brief opposing Appellant's motion for default judgment against Jones.

[3] "CCAP is a case management system provided by [the] Wisconsin Circuit Court Access program[.]" **State v. Bonds**, 2006 WI 83, ¶6, 292 Wis. 2d 344, 717 N.W.2d 133. CCAP "provides public access online to reports of activity in Wisconsin circuit courts[.]" **Id.**

2

on January 29, 2024, and issued its oral ruling a few weeks later. The transcript from the February 2024 oral ruling hearing also reflects that the court heard argument from the parties regarding Auto-Owners' motion: "Auto-Owners filed a motion seeking a declaration that the aforementioned policy did not provide *coverage* for the alleged occurrences. The matter was thoroughly briefed *and argued*[.]" (Emphases added.) We do not know, however, what the parties specifically argued at the hearing because the Appellant did not include the transcript from that motion hearing in the appellate Record, and instead identified only the "Declaratory Judgment Hearing, 02/22/2024" in his "Statement on Transcript"[4] as being necessary for appellate purposes.[5] *See Gaethke v. Pozder*, 2017 WI App 38, ¶36, 376 Wis. 2d 448, 899 N.W.2d 381 ("It is the appellant's

---

[4] Shortly thereafter, the Appellant filed an "Amended Statement on Transcript" indicating that "[a]ll transcripts necessary for this appeal are already on file[.]"

[5] The Majority refuses to acknowledge that we simply do not know what Auto-Owners—or any party for that matter—argued at the motion hearing because the Appellant failed to include the transcript of that hearing in the appellate Record. Instead, the Majority willingly dons its blinders and states only that Auto-Owners' briefs in support of its motion, which were filed *prior* to the motion hearing, "were grounded exclusively on the duty to defend based on the four corners of the complaints and the policy." Majority, ¶6 n.4. Be that as it may, it is pure speculation that Auto-Owners made *no* other argument whatsoever at the motion hearing. And, because the Appellant failed to include the transcript from that hearing in the appellate Record, we must assume the transcript supports the circuit court's coverage decision. *See Gaethke v. Pozder*, 2017 WI App 38, ¶36, 376 Wis. 2d 448, 899 N.W.2d 381 ("It is the appellant's responsibility to ensure completion of the appellate record and 'when an appellate record is incomplete *in connection with an issue raised by the appellant*, we must assume that the missing material supports the trial court's ruling.'" (emphasis added; quoted source omitted)).

The Majority's willingness to ignore facts and rely on speculation unequivocally calls into question its basis for choosing to address only the question of whether Auto-Owners owed Jones a duty to defend rather than more fully addressing the duty to indemnify and whether the policy provided actual, as opposed to arguable, coverage. *See* Majority, ¶6 n.4. This is particularly so in that Auto-Owners, in its Reply brief before the circuit court, explicitly stated it was "clear that the motion sought a declaration that there was no *coverage* under either … complaint" and asked that the court "grant the motion for declaratory judgment and declare that the policy *does not provide insurance coverage*[.]" (Emphases added.)

responsibility to ensure completion of the appellate record and 'when an appellate record is incomplete *in connection with an issue raised by the appellant*, we must assume that the missing material supports the trial court's ruling.'" (emphasis added; quoted source omitted)).

¶20 The motion hearing transcript—or lack thereof—aside, at the February oral ruling hearing, the circuit court referenced Auto-Owners' "motion seeking a declaration that the aforementioned policy *did not provide coverage* for the alleged occurrences." (Emphasis added.) It then went on to explain the "well-known and oft repeated" "three step process" for determining whether an insurance policy provides for an initial grant of coverage, whether any exclusions apply to preclude coverage, and whether an exception reinstates coverage.[6] The court went on to apply those principles to the insurance policy at issue and ultimately concluded that while the policy provided an initial grant of coverage, the exclusion pertaining "to bodily injury arising out of a business owned by an insured[,]" which "includes home day care services," applied. Because no exception reinstated coverage, the court ultimately held "that Auto-Owners owes neither a duty to defend nor a duty to indemnify and … that *there is no coverage*." (Emphasis added.) Although the court referenced the "alleg[ations] in these

---

[6] While the Majority is correct that this framework also tracks "the duty to defend analysis under Wisconsin law," Majority, ¶6 n.4, our supreme court has explained that the duty to defend and insurance coverage analyses are largely the same: "To an extent, the three steps used in analyzing an insurance contract are the same whether a court is determining an insurer's duty to defend or its duty to indemnify." *See Water Well Sols. Serv. Grp., Inc. v. Consolidated Ins. Co.*, 2016 WI 54, ¶16 n.11, 369 Wis. 2d 607, 881 N.W.2d 285. There is a distinction, however, in that "unlike duty to defend determinations, extrinsic evidence is admissible in coverage disputes to prove (or disprove) the allegations set forth in the complaint." *Id.* Here, the parties submitted affidavits—extrinsic evidence—in support of their respective briefing before the circuit court, and Auto-Owners' affidavit explicitly referenced information already before the court. The Majority's reliance on the circuit court's having "tracked" the duty to defend framework when it concluded there was no duty to defend carries little weight.

actions[,]" it did not specifically reference the Complaint or other documents aside from the policy itself in explaining its rationale. Likewise, it did not reference or limit its analysis to the four-corners rule. Instead, the court focused on a plain language policy interpretation.

¶21 The circuit court entered a written order memorializing its oral ruling, again acknowledging Auto-Owners had "moved the court for declaratory judgment that the Auto-Owners' Policy *does not provide coverage* for the claims and/or damages alleged in the complaint" as well as that it did not have a "duty to defend and indemnify" its insured. The order went on to state, as relevant, that the court "hereby ordered, adjudged, and decreed" the following:

> 1. The plain language of the policy does have an initial grant of coverage.
>
> 2. The plain language of the policy contains an exclusion for claims arising out of a home day care business.
>
> 3. Applying the plain language of the policy to the facts alleged in the complaint, there is an initial grant of coverage which is then excluded pursuant to the exceptions to coverage.
>
> 4. Auto-Owners Motion for Declaratory Judgment is granted.
>
> 5. Auto-Owners has no duty to defend or indemnify Harmony Jones[.]

(Some formatting altered.)

¶22 Despite the clear language in both Auto-Owners' motion and the circuit court's ruling regarding *coverage*, the Majority chooses to limit its discussion to whether the court erred in concluding that Auto-Owners did not have a duty to defend Jones. Specifically, the Majority claims that because "Auto-Owners moved for judgment on the pleadings[ and] the only evidence it submitted

was the insurance policy[,]" it necessarily follows that the only issue before the court on appeal is whether Auto-Owners owed Jones a duty to defend based on the four-corners rules.[7]  Majority, ¶6.  As explained below, I disagree.

¶23     As an initial matter, I do agree with the Majority insofar as it explains that determining whether an insurer initially owes its insured a duty to defend is covered by the four-corners rule.  I part ways, however, because I disagree with its contention that the *only* issue before this court on appeal is whether Auto-Owners owed its insured a duty to defend based on the four-corners rule.  I disagree because, here, Auto-Owners provided a defense to Jones under a reservation of rights and thereafter sought to intervene and bifurcate the proceedings to address coverage.  As our supreme court explained in *Olson v. Farrar*, "the purpose of the four-corners rule has been served once the insurer has elected to provide a defense pending a final determination on coverage[,]" at which point "[t]he four-corners rule is not further implicated, *and the court proceeds to a determination of coverage.*"  2012 WI 3, ¶34, 338 Wis. 2d 215, 809 N.W.2d 1 (emphasis added).  Stated differently:

> Where the insurer has provided a defense to its insured, a party has provided extrinsic evidence to the court, and the court has focused in a *coverage* hearing on whether the

---

[7] Despite acknowledging in his appellate brief that the "standard of review on a declaratory judgment *determining insurance coverage* involves the interpretation of an insurance policy[, which] is a question of law that the appellate court reviews de novo[,]" the Appellant similarly errs in focusing only on the applicability of the four-corners rule despite the clear and simple fact that the scope of this appeal exceeds the question of Auto-Owners' duty to defend. (Emphasis added.)  In acknowledging that the Appellant focuses on the applicability of the four-corners rule, the Majority seems to view the Appellant's decision to do so as justifying its own tunnel vision. *See* Majority, ¶6 n.4.  However, as our supreme court has explained, "[t]he right to a determination on coverage in the circuit court would often be empty if … the court's inquiry were limited by the four-corners rule."  *Olson v. Farrar*, 2012 WI 3, ¶37, 338 Wis. 2d 215, 809 N.W.2d 1.

> insured's policy provides *coverage* for the plaintiff's claim,
> it cannot be said that the proceedings are governed by the
> four-corners rule. The insurer's duty to continue to defend
> is contingent upon the court's determination that the
> insured has coverage if the plaintiff proves his case.

*Estate of Sustache v. American Fam. Mut. Ins. Co.*, 2008 WI 87, ¶29, 311 Wis. 2d 548, 751 N.W.2d 845. A review of the procedural history confirms we are at that point here, and consequently, neither the circuit court nor the appellate court is bound to consider *only* the Complaint and the insurance policy—in other words, we need not apply the four-corners rule at this juncture—particularly given that Auto-Owners filed a motion for judgment on the pleadings, which is governed by WIS. STAT. § 802.06(3).

¶24 Pursuant to WIS. STAT. § 802.06(3), "[a]fter issue is joined between all parties … any party may move for judgment on the pleadings." Section 802.06(3) further provides that "[i]f, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in [WIS. STAT. §] 802.08[.]"[8]

¶25 Auto-Owners filed an affidavit in support of its motion for declaratory judgment, and that affidavit attached its responses to some of Appellant's discovery requests and a partial copy of its insurance policy, and the affidavit specifically noted and referenced the "multiple copies" "of the insurance

---

[8] This clear statutory language further highlights the Majority's error in concluding that because Auto-Owners "only" submitted the insurance policy in support of its motion for judgment on the pleadings, the issue on appeal is limited to a determination of whether Auto-Owners owed its insured an initial duty to defend based on the four-corners rule. *See* Majority, ¶6. As WIS. STAT. § 802.06(3) makes clear, judgment on the pleadings is based *only* on the pleadings, and when any additional evidence—such as an insurance policy—is introduced in support of the motion, the motion is effectively treated as one for summary judgment.

policy" already "contained within the Court's file."[9]   The circuit court clearly considered the insurance policy referenced in the supporting affidavit in concluding the policy did not provide coverage, thereby effectively rendering Auto-Owners' motion one for summary judgment.[10]   Summary judgment "shall be rendered if the pleadings, depositions, answers to interrogatories, *and admissions on file*, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  WIS. STAT. § 802.08(2); *see also Talley v. Mustafa*, 2018 WI 47, ¶12, 381 Wis. 2d 393, 911 N.W.2d 55.[11]   We review a circuit court's grant or denial of summary judgment de novo.  *Wisconsin Prop. Taxpayers, Inc. v. Town of Buchanan*, 2023 WI 58, ¶8, 408 Wis. 2d 287, 992 N.W.2d 100.  Whether the circuit court erred here requires review of the court's interpretation of the insurance policy, which is also a question appellate courts review de novo.  *See American Fam. Mut. Ins. Co. v. American Girl, Inc.*, 2004 WI 2, ¶23, 268 Wis. 2d 16, 673 N.W.2d 65.

---

[9] The Appellant likewise submitted an affidavit with supporting papers in support of his response to Auto-Owners' motion for declaratory judgment on the pleadings.

[10] Procedurally, a party may seek judgment on the pleadings after issue has been joined. WIS. STAT. § 802.06(3).  Here, the circuit court entered a default judgment against Jones, the insured, which occurs where "*no* issue of law or fact has been joined[.]"  WIS. STAT. § 806.02(1) (emphasis added).  The practical effect of a default judgment, however, is to render the allegations set forth in a complaint as true, which is arguably tantamount to a pleading.  *See Estate of Otto v. Physicians Ins. Co. of Wis., Inc.*, 2008 WI 78, ¶42, 311 Wis. 2d 84, 751 N.W.2d 805 ("when a defendant is determined to be in default, the factual allegations against the defendant, except those relating to the amount of damages, are ordinarily deemed true").

[11] The standard for judgment on the pleadings is substantially similar: "A judgment on the pleadings is essentially a summary judgment decision without affidavits and other supporting documents."  *Southport Commons, LLC v. DOT*, 2021 WI 52, ¶18, 397 Wis. 2d 362, 960 N.W.2d 17.  "Whether judgment on the pleadings should be granted is a question of law" appellate courts review de novo.  *Id.*; *see also Wisconsin Elections Comm'n v. LeMahieu*, 2025 WI 4, ¶11, 414 Wis. 2d 571, 16 N.W.3d 469.

¶26 To determine whether Auto-Owners' policy provides coverage, we must "interpret and apply the language of the insurance policy." *See 5 Walworth, LLC v. Engerman Contracting, Inc.*, 2023 WI 51, ¶31, 408 Wis. 2d 39, 992 N.W.2d 31. Interpreting an insurance policy requires that we "determine and give effect to the intent of the contracting parties[,]" and we will construe the insurance policy "as [it] would be understood by a reasonable person in the position of the insured." *American Girl, Inc.*, 268 Wis. 2d 16, ¶23. We give the insurance policy language its "common and ordinary meaning[,]" and we construe ambiguous language "in favor of coverage." *Danbeck v. American Fam. Mut. Ins. Co.*, 2001 WI 91, ¶10, 245 Wis. 2d 186, 629 N.W.2d 150. Language in an insurance policy "is ambiguous 'if it is susceptible to more than one reasonable interpretation.'" *Folkman v. Quamme*, 2003 WI 116, ¶13, 264 Wis. 2d 617, 665 N.W.2d 857 (quoting *Danbeck*, 245 Wis. 2d 186, ¶10).

¶27 It is undisputed that Auto-Owners' insurance policy provides for an initial grant of coverage; thus, the next question is whether an exclusion to coverage applies. *See American Girl, Inc.*, 268 Wis. 2d 16, ¶24. "Exclusions are narrowly or strictly construed against the insurer if their effect is uncertain[,]" and "[w]e analyze each exclusion separately[.]" *Id.* If an exclusion applies, we then look to whether an exception to the exclusion reinstates coverage. *Id.* Where there is an initial grant of coverage under the policy's terms, the insurer bears the burden of establishing "that an exclusion nevertheless precludes coverage." *Day v. Allstate Indem. Co.*, 2011 WI 24, ¶26, 332 Wis. 2d 571, 798 N.W.2d 199.

¶28 Pursuant to the policy's terms, Auto-Owners "will pay all sums any **insured** becomes legally obligated to pay as damages because of or arising out of **bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies." The policy defines "occurrence" as "an accident that results in

**bodily injury** or **property damage** and includes, as one **occurrence**, all continuous or repeated exposure to substantially the same generally harmful conditions." The policy also provides that "**Coverage E - Personal Liability** and **Coverage F - Medical Payments to Others** do not apply" to, inter alia, "**bodily injury** or **property damage** because of or arising out of a **business** owned or financially controlled by an **insured** or by a partnership or joint venture of which an **insured** is a partner or member. This exclusion does not apply to activities of an **insured** ordinarily incident to nonbusiness pursuits." In turn, the policy defines "business" as including "home day care services provided by an **insured**[.]" However, "[**b**]**usiness** does not include[,]" as relevant:

> **a.** home day care services:
>
> **(1)** any **insured** provides on an infrequent and irregular basis;
>
> **(2)** provided part time by a **relative** who is under 21 years of age;
>
> **(3)** provided to a **relative** by any **insured**; nor
>
> **(4)** provided on a mutual exchange basis[.]

Auto-Owners relied on the "home day care business exclusion" in asserting that it was entitled to a ruling that it had neither a duty to defend nor indemnify and that there was no coverage under the policy's terms.

¶29    As previously explained, the practical effect of the default judgment entered against Jones, the insured, is that she is deemed to have admitted that she "ran a child day care *business* out of her home[,]" that the deceased child was left in her care on the date of his death, and that the deceased child "suffered significant and painful injuries … that ultimately caused [his] death" while in Jones' care. (Emphasis added.) Jones' admission that she ran a business from her

10

home necessarily precludes any *reasonable* interpretation that the day care business she admits to having operated out of her home was something she "provide[d] on an infrequent and irregular basis" or was "[p]rovided on a mutual exchange basis[.]" *See, e.g.*, **Preisler v. General Cas. Ins. Co.**, 2014 WI 135, ¶18, 360 Wis. 2d 129, 857 N.W.2d 136 ("We interpret insurance policy language according to its plain and ordinary meaning as understood by a reasonable insured."). Jones' admission that *she* ran the business and that the deceased child was left in *her* care also belies any *reasonable* suggestion that this was a "home day dare service[]" "provided part time by a **relative** who is under 21 years of age[.]" There is also no indication that Jones was related to the deceased child. Simply put, this was a typical homeowner's insurance policy, which does not cover business liability. If Jones wanted coverage for her business, she needed to notify Auto-Owners that she was running a business and pay a premium for that coverage.

¶30 It would be similarly *unreasonable* to conclude—despite the Appellant's contention to the contrary—that someone who runs a *business* out of her *home* nevertheless does not "own[]" or otherwise "financially control[]" the business. I would therefore conclude that in light of the deemed admissions arising from the insured's default, the only *reasonable* interpretation of the policy's coverage—the guidepost of insurance policy construction—under the circumstances present here is that the "home day care business exclusion" applies, and the circuit court did not err in determining there was no coverage.

¶31 As a final matter, the Majority leaves additional questions unanswered. First, the Majority fails to clarify the impact of its reversal of the circuit court's grant of judgment on the pleadings—specifically, whether its reversal simply means that Auto-Owners has a duty to defend *and indemnify* its

11

insured and that it nevertheless can seek an additional ruling on coverage or rather, instead, whether the reversal is in and of itself the dispositive coverage determination. The order the Majority reverses explicitly declared that Auto-Owners had no duty to indemnify—and the Majority reverses the order *in whole*. Clarification is important given that: (1) Auto-Owners' motion for judgment on the pleadings sought not only a ruling that it had no duty to defend or indemnify but also a ruling that its "policy … *does not provide insurance coverage* for the claims and/or damages alleged"; and (2) in granting the motion, the circuit court "declare[d] that there *is no coverage*" and additionally stated "that the policy provides an initial grant of coverage that *is subsequently excluded* under the policy language and unreinstated by any applicable exceptions" and that there was therefore "neither a duty to defend nor a duty to indemnify[.]" (Emphases added.) Because the court's language confirms that its ruling implicated not only the duty to defend and indemnify but *also* whether the policy provided coverage at all, the Majority's decision reverses a *coverage* decision—not only a decision as to whether Auto-Owners owed its insured a duty to defend.[12]

¶32 The Majority also fails to explain *who* or *what* Auto-Owners is required to defend on remand. Although the Majority suggests I "make[] much of Jones' default[] resulting in her admission to the allegations of the complaint," Majority, ¶6 n.4, the simple fact of the matter is that the default judgment and the deemed admissions are the law of the case, and the duty to defend is premised upon there being an insured to defend as it relates to whether or not that party is

---

[12] Even assuming Auto-Owners can file an additional coverage motion on remand, it makes little sense—and is contrary to judicial economy—to reverse and remand this matter to the circuit court for further proceedings on a coverage issue that can be determined as a matter of law now.

liable for the conduct alleged. *See, e.g.*, ***Johnson Controls, Inc. v. London Market***, 2010 WI 52, ¶28, 325 Wis. 2d 176, 784 N.W.2d 579 (insurance contracts "typically impose two main duties—the duty to indemnify the insured against damages or losses, and the duty to defend *against claims for damages*" (emphasis added)).

¶33    Here, the circuit court entered a default judgment against Jones, therefore establishing her liability for the claims alleged, and there are, therefore, no remaining claims against which to defend Auto-Owners' *insured* Jones. Accordingly, because Jones' liability had already been established *prior to* Auto-Owners having filed its motion, the Majority's focus on whether Auto-Owners owed a duty to defend in this case is, put simply, misplaced entirely.

¶34    After the default judgment, the only remaining question was whether Auto-Owners, based on the policy's terms, must pay the damages for which Jones is liable. The circuit court concluded there was no coverage—that Auto-Owners did not have a duty to indemnify. The Majority reverses that decision but insists it is really saying only that Auto-Owners has a duty to defend an insured who has already been found liable. Fortunately—at least for the status of the law in Wisconsin—the Majority commits this faux pas in a per curiam opinion rather than a published decision. Second, the Majority also fails to clarify whether Katherine Bolinski is bound by its decision. Rather than addressing the point raised in the briefing, the Majority ducks the issue altogether by noting that "Katherine did not file a notice of appeal[.]" Majority, ¶6 n.4. Auto-Owners asked this court to acknowledge that Katherine is bound by this court's decision despite not having joined in or participated in this appeal of the coverage decision. The Majority, however, fails to answer this question, which will lead to unnecessary confusion on remand. Does the Majority's failure to address this

13

issue mean it agrees with Auto-Owners' assertion? Is it saying the circuit court should address this on remand? No one knows, and apparently it's anybody's guess.

¶35 When parties appeal to this court and wait months—in this case, more than a year from the date the Notice of Appeal was filed—for an appellate decision, we should clearly answer the questions raised in the appeal. The Majority, however, leaves the aforementioned questions unanswered, and its failure to answer these questions will lead to unnecessary confusion, the waste of scarce judicial resources, and additional costs and litigation to the parties.

¶36 The circuit court's decision that there is no coverage under the terms of this policy was correct, and I would affirm. Accordingly, I respectfully dissent.